**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CLOTEAL E. BENNETT,

       Plaintiff

     v.

ANDREW SAUL[1],

       Defendant

Civil Action No. 18-1745 (CKK)

**MEMORANDUM OPINION**
(October 27, 2019)

Plaintiff Cloteal Bennett brings this action seeking review of the final administrative decision by Defendant Andrew Saul, in his official capacity as Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. §§401-433. Pending before the Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance. After reviewing the parties' briefs,[2] the administrative record, and the relevant case law, the Court shall DENY Plaintiff's [19] Motion for Judgment of Reversal and shall GRANT

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Saul is substituted in his official capacity as Commissioner of Social Security.

[2] The Court's consideration has focused on the following documents:

• Pl.'s Mem. in Support of Pl.'s Mot. for Judgment of Reversal, ECF No. [19] ("Pl.'s Mot.");

• Def.'s Mot. for Judgment of Affirmance and Opp'n to Pl.'s Mot. for Judgment of Reversal, ECF No. [20] ("Def.'s Mot. and Opp'n"); and

• Pl.'s Opp'n to Def.'s Mot. for Judgment of Affirmance and Reply to Def.'s Opp'n, ECF No. [22] ("Pl.'s Opp'n and Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

Defendant's [20] Motion for Judgment of Affirmance. For the reasons that follow, the Commissioner's decision below is affirmed.

## I. BACKGROUND

### A. Legal Framework and Procedural History

Plaintiff petitioned the Social Security Administration for DIB pursuant to Title II of the Social Security Act on March 13, 2014. *See* Pl.'s Mot, ECF No. 19, 1. To qualify for DIB, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," coupled with an inability to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(1)-(2). By satisfying both conditions, a claimant is "disabled" for purposes of the Social Security Act. To decide whether a claimant has proven she is disabled, the ALJ must use a five-step sequential analysis. 20 C.F.R. §§ 404.1520(4), 416.920(4). The steps require a determination of (1) current work activity; (2) severity of the impairment; (3) whether the impairment meets or equals a listed impairment; (4) if the impairment prevents claimant from doing past work; and (5) if the impairment prevents claimant from doing other work upon consideration of the claimant's residual functional capacity ("RFC"). *Id.*

Plaintiff was born on February 14, 1968. AR 29. Prior to alleging disability, Plaintiff worked as a Metro Special Police Officer until 2007. *Id*. Plaintiff was injured on the job in 2000 when she caught her leg under a chair and fell against a wall. AR 393. In her application for DIB, Plaintiff alleged that her disabilities, which stemmed from her 2000 injury, included lumbar strain and herniated disc, cervical strain, right wrist pain and fracture, and obesity. AR 245-46, 302, 48-49.

Plaintiff's claims were initially denied on August 1, 2014 and on reconsideration on January 2, 2015. AR 95, 104. Following these denials, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). That hearing occurred on September 21, 2017, where Plaintiff and an impartial vocational expert testified. AR 38-66.[3] Plaintiff was represented by counsel. At the hearing, Plaintiff amended the date for the alleged onset of her disability to April 1, 2015. AR 47. In a decision dated October 3, 2017, the ALJ denied Plaintiff's requested benefits. AR 19-31. Plaintiff sought review of this decision by the Appeals Council. However, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 6-10.

In issuing the controlling decision denying Plaintiff DIB, the ALJ made the following determinations. At Step One, the ALJ noted that Plaintiff did not engage in substantial gainful activity during the period from her amended onset date, April 1, 2015, through her date of last insured, March 31, 2016. AR 24. At Step Two, the ALJ determined that the medical evidence established that Plaintiff suffered from "the following severe impairments: degenerative disc disease of the lumbar spine ("DDD") and degenerative joint disease of the left knee ("DJD")." *Id.* The ALJ did not find Plaintiff's obesity to be a severe impairment but considered obesity in the context of the decision. AR 24-25. At Step Three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 25. The ALJ found that Plaintiff's physical impairments did not meet the requirements of the impairments

---

[3] A prior administrative hearing was held on March 16, 2017. AR 67-86. However, the ALJ presiding over the hearing died before issuing a decision. So, another hearing was held before a different ALJ. AR 40. The second hearing and the resulting decision are the subject of the party's Motions and the Court's Memorandum Opinion.

listed. Additionally, the ALJ found that Plaintiff did not demonstrate the required degree of difficulty in ambulating. *Id.*

As is most relevant to this Memorandum Opinion, at Step Four, the ALJ found that Plaintiff "had the residual functional capacity (hereafter "RFC") to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs or ramps; occasional stooping, crouching, crawling or kneeling." AR 26. Based on Plaintiff's RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as a Special Police Officer. AR 29. At Step Five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was also able to do other work. Crediting the vocational expert's testimony, the ALJ found that Plaintiff could perform the requirements of representative occupations such as machine tender, packer and packaging worker, and grading/sorting worker, which are available in the national economy for an individual similarly situated to Plaintiff. AR 29-30.

Based on this five-step analysis, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 1, 20[1]5, the amended onset date, through March 31, 2016, the date last insured (20 CFR 404.1520(f))." AR 31. As was previously stated, Plaintiff sought review of this decision by the Appeals Council. AR 6-11. On April 30, 2018, the Appeals Council upheld the decision of the ALJ, finding no basis for changing the ALJ's decision. AR 6. Having exhausted her administrative remedies, Plaintiff has brought this action seeking reversal of her disability denial. *See generally* Pl.'s Mot, ECF No. 19.

**B. Evidence Contained in the Administrative Record**

The ALJ evaluated Plaintiff's condition based on evidence including various medical records and the testimony of Plaintiff and the vocational expert during the administrative hearing in this case. The Court recounts below the most relevant portions of the administrative record.

**1. Physical Health Records**

**a. Drs. Phillips & Green, M.D. Partnership**

Plaintiff was initially injured in 2000 when, working as a Special Police Officer, Plaintiff caught her leg under a chair and fell. From approximately 2008 through 2010, Plaintiff treated with orthopedist Drs. Jeffery Phillips, M.D. and Simon Green, M.D.

Throughout 2008, the doctors noted that Plaintiff had tenderness and spasms in her lumbar region. Plaintiff also had restricted range of motion in her lumbar area. However, Plaintiff was found to be neurologically intact in her lower extremities. Plaintiff was noted to walk slowly but was found to have an antalgic gait or limp only occasionally. Plaintiff began epidural steroids for her pain. AR 522-537.

In December 2008, medical notes from Dr. Phillips indicate that Plaintiff had a satisfactory gait but continued to have tenderness and muscle spasms in the mid and low lumbar region. Plaintiff's range of motion in her back was restricted with pain and muscle spasms. The doctor recommended that Plaintiff be considered for light duty type work where she is "not on her feet all day; not doing any significant standing, walking or climbing; patient could sit and watch monitors and/or do desk work but cannot work doing routine work as a special police officer." AR 375.

Further notes throughout 2009 continue to indicate that Plaintiff had tenderness in her mid to low lumbar region with moderate muscle spasms. Plaintiff's range of motion continued to

be restricted. But, Plaintiff was neurologically intact in her lower extremities and was found to have a satisfactory gait. During this time, Plaintiff was given epidural steroids for her pain. AR 508-520.

Notes from March 2010 indicate that, when standing, Plaintiff bore weight equally on both feet but walked with a right antalgic gait. She also had tenderness in the mid and low lumbar region and continued to have muscle spasms. Plaintiff had intact reflexes and motor power. The doctor indicated that Plaintiff was discharged from active care as there was nothing further that could be done. He stated that Plaintiff could work in a "strictly sedentary position and should not be working as an active special police office; this is on a permanent basis." AR 505-06.

In September 2014, Plaintiff returned to the clinic of Drs. Phillips and Green. Dr. Phillips determined that Plaintiff bore weight equally on both feet and ambulated was a mild right antalgic gait. She could stand on her heels and toes without difficulty. She had tenderness from the mid to low lumbar region. Straight leg raises caused Plaintiff back pain, but her reflexes, sensation, and motor power were intact. The doctor indicated that Plaintiff's examination had not changed significantly since 2010 and that there was nothing he could do for her except recommend pain management. AR 504.

In November 2016, Plaintiff again returned to the clinic following a car accident, which is further discussed below. AR 490-92. Plaintiff's chief complaints were neck pain, mid and lower back pain, headaches, and difficulty sleeping. AR 490. A physical examination revealed neck spasms, tenderness, and limited range of motion. AR 491. Additionally, Plaintiff stood erect bearing equal weight on both lower extremities but walked with a slight limp. Plaintiff was able to walk on her heels and toes. Plaintiff had tenderness and spasms in her back. She had a limited

range of motion but negative straight leg tests, intact muscle power, and no significant atrophy. *Id.* X-rays showed no fractures or dislocations. *Id.* Plaintiff was diagnosed with a neck and lower back strain. AR 492. The doctor recommended physical therapy. *Id.* Plaintiff was listed as not fit for working duty. *Id.*

Plaintiff returned approximately one month later for a re-evaluation. AR 489. Plaintiff reported continued neck and low back pain. She also indicated swelling in her right wrist due to the car accident. On physical examination, Plaintiff's neck was tender and had spasms and restricted range of motion. Plaintiff's back was tender with mild spasms but had improved since the prior visit. There was still mild decreased motion, which had also improved since the prior visit. Plaintiff was neurologically intact in her lower and upper extremities. Plaintiff's wrist was tender and the range of motion was restricted with some weakness. However, there was no swelling. *Id.* The doctor recommended continued therapy.

Plaintiff continued to return for check-ups in early 2017. AR 583-86. On her visit in January 2017, Plaintiff reported that she was still having wrist and neck pain but that her back pain had improved to the pre-accident state. AR 586. An examination revealed tenderness and restricted motion in Plaintiff's neck and wrist. *Id.* The doctor also ordered an MRI of Plaintiff's wrist which revealed marrow edema and a small volar ganglio but no fracture line. AR 584. In February 2017, the doctor indicated that Plaintiff was unable to work pending Plaintiff's next evaluation. AR 583, 587.

**b. Dr. Joshua Ammerman**

From 2006 to 2010, Plaintiff treated with Dr. Joshua Ammerman, M.D. for lower back pain and lower extremity radiculopathy resulting from her 2000 workplace injury. Records from October 2006 indicate that Plaintiff had tenderness and mild restriction of motion in her lower

lumbar. However, she had an unremarkable gait and intact reflexes, could stand on her heels and toes, and demonstrated equivocal straight leg raising. AR 393. A lumbar MRI from December 2007 showed small central disc herniation with no evidence of nerve root impingement. AR 376. Based on the MRI, it was determined that Plaintiff was not a candidate for surgery and instead used pain management, such as epidural blocks and a TENS unit. AR 400, 373, 389, 383.

In October 2008, the doctor noted that Plaintiff continued to have back and bilateral leg pain and walked with a limp. The doctor recommended continued pain management. AR 401. Notes from early 2009 indicate that Plaintiff walked with a pronounced limp and had significant restriction of the lumbar range of motion. She was restricted to sedentary work. But, Plaintiff still had full strength in her lower extremities. AR 402. Later in 2009, notes indicated that Plaintiff was doing reasonably well with pain management. The doctor determined that Plaintiff had an improved limp but continued to have restricted lumbar range of motion. AR 403. In August 2010, medical notes stated that Plaintiff continued to walk with a mild limp and have a restricted lumbar range of motion. She also had discomfort in her hips. She was continuing with pain management and had used Lidoderm patches with good results. AR 392. Plaintiff was instructed to return on an as-needed basis.

Plaintiff returned for a follow-up 2012. Plaintiff indicated that she had back and lower extremity pain and tingling. She reported numbness in her toes. The doctor noted that motor testing was full in the lower extremities, straight leg raising was negative and there was moderate restriction of lumbar range of motion. AR 391.

### c. Dr. Rebecca Gliksman

In July 2014, the Division of Disability Determination sent Plaintiff for an examination in connection with her disability claim. AR 404-08. Plaintiff had a consultative examine with Dr.

Rebecca Gliksman, M.D. Plaintiff presented with back pain caused by her 2000 workplace injury. Plaintiff reported a worsening of her pain over time. Plaintiff also reported increased numbness when sitting for an extended period of time. Plaintiff further stated that she had difficulty walking, climbing stairs, and sitting. AR 404. In examining Plaintiff, the doctor stated that Plaintiff appeared to be in acute distress due to pain. Plaintiff initially walked with a slight limp, but her gait normalized. She could squat to 1/3. She did not require an assistive device for walking. AR 406. Plaintiff was diagnosed with lumbar pain with radiation and received a fair to guarded prognosis. AR 407. The doctor found a moderate limitation in walking, climbing, lifting and carrying due to lower back pain with limited range of motion and decreased lower extremity strength. *Id.*

### d. Dr. Michelle Craig

In November 2014, Plaintiff saw Dr. Michelle Craig, M.D., a primary care physician. Dr. Craig completed a medical source statement listing Plaintiff's prognosis as poor to fair. AR 410-13. Dr. Craig referred to 2007 and 2008 records, including findings of the MRIs. Dr. Craig reported that Plaintiff had shooting pain down her legs which was exacerbated by sitting and walking for extended periods. Dr. Craig further found a reduced range of motion, positive straight leg raises, tenderness, and muscle spasms. Dr. Craig found that Plaintiff could walk ½ to 1 block without resting or severe pain and that Plaintiff could sit for 2-4 hours and stand for less than 2 hours during a normal working day. She found that Plaintiff would require a job that allowed for regular shifts from sitting, to standing, to walking during the work day. Additionally, Plaintiff could occasionally lift or carry items less than 10 pounds, rarely lift or carry items weighting 10 pounds, and never lift or carry more. Plaintiff could never twist, stoop, crouch, or climb ladders, but she could rarely climb stairs. Finally, Dr. Craig concluded that, in a typical

work day, Plaintiff would be off task 25% or more of the time and was incapable of even low stress work. *Id.*

In November 2015, Plaintiff returned to Dr. Craig for another source statement. AR 414-19. According to this source statement, Dr. Craig diagnosed Plaintiff with severe lumbar strain, bilateral sciatica, osteoarthritis, and muscle spasms that had not improved with treatment. Plaintiff could occasionally lift and carry up to 10 pounds but never more. Plaintiff could sit for 20-30 minutes and stand or walk for 15-20 minutes. *Id.* Dr. Craig noted that Plaintiff had severe pain which affected her daily activities. However, the doctor acknowledged that Plaintiff could perform activities like shopping, could prepare simple meals and feed herself, and could care for her own personal hygiene. *Id.*

And, in August 2016, during a consultative examination, Dr. Craig noted tenderness of the lumbar spine and a limited range of motion. However, Plaintiff reported being "able to work with back pain." AR 560-63. Plaintiff was also treated for obesity. AR 564. And, in October 2016, an X-ray of the lumbar spine showed mild rotatory scoliosis, degenerative disease, and moderate osteoporosis. AR 580. An X-ray of her left knee also showed degenerative disease and a possible effusion. AR 581.

Following a car accident in November 2016, which is discussed further below, Plaintiff returned to Dr. Craig. AR 573-76. Plaintiff reported pain, muscle spasms, and stiffness. Plaintiff exhibited reduced ranges of motion in her neck and lumbar spine. AR 575.

In December 2016, Plaintiff again returned to Dr. Craig for knee pain, back pain, wrist pain, and obesity. AR 539-40. Plaintiff showed tenderness and decreased range of motion in these areas. *Id.* However, Plaintiff had 5/5 strength testing of the major muscles innervated by the lumbar spine and no neurological deficits. AR 542-43.

In February 2017, Dr. Craig completed a third medical source statement. AR 596-601. Dr. Craig indicated that Plaintiff could lift and carry up to 10 pounds occasionally but never more. AR 596. Plaintiff could sit for 40 minutes to 1 hour, stand for 20-30 minutes, and walk for 15-20 minutes. In total during a workday, Plaintiff could sit for 2-3 hours, stand for 1-2 hours, and walk for 2 hours. AR 597. Plaintiff could also never reach, push, or pull but could perform other functions with her hands. AR 598. Plaintiff could never climb stairs, climb ladders, balance, stoop, kneel, crouch, or crawl. AR 599. However, Plaintiff could still complete daily activities such as shopping, preparing and eating simple meals, and caring for her personal hygiene. AR 601.

e. **Emergency Room Visit**

On November 11, 2016, Plaintiff was treated at Johns Hopkins emergency room following a motor vehicle accident. AR 467-72. She was diagnosed with a strained neck and back. On examination Plaintiff had neck spasms and a limited flexation and rotation. However, there was no tenderness to her back and Plaintiff demonstrated normal strength and reflexes and negative straight leg raise tests. AR 471.

f. **State Agency Opinions**

In July 2014, Plaintiff saw Dr. James Grim, M.D., a state agency physician, for a RFC screening. Plaintiff's impairment diagnosis was spine disorder and obesity. AR 90. Dr. Grim reported that Plaintiff could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand or walk for 4 hours, and could sit with breaks for 6 hours. AR 91. Plaintiff could climb stairs frequently, could never climb ladders, could balance frequently, and could stoop, kneel, crouch, and crawl occasionally. AR 91-92. Dr. Grim reported that Plaintiff initially

walked with a limp, but the limp normalized with time. AR 92. He further reported that Plaintiff had normal leg strength. *Id.*

In December 2014, Plaintiff saw another state agency physician, Dr. Eduardo Haim, M.D., for a RFC screening. AR 100-01. Plaintiff's impairment diagnosis was spine disorder and obesity. AR 99. Dr. Haim reported that Plaintiff could occasionally lift or carry 10 pounds, could frequently lift or carry less than 10 pounds, could stand or walk for 4 hours, and could sit with breaks for 6 hours. AR 100. Plaintiff could climb stairs frequently, could never climb ladders, could balance frequently, and could stoop, kneel, crouch, and crawl occasionally. AR 100-01. Dr. Haim reported a slow gait and that Plaintiff began walking with a limp that normalized with time. AR 101. He further reported that Plaintiff had normal leg strength. *Id.*

## 2. Transcript of the Administrative Hearing in this Case

Plaintiff was represented by counsel and testified at the September 21, 2017 hearing. During the hearing, Plaintiff's alleged onset of disability date was amended to April 1, 2015 from the previous date of December 20, 2007. AR 47. At the hearing, Plaintiff and her counsel alleged severe impairments of a lumbar strain and herniated disc, cervical strain, right wrist pain and fracture, and obesity. AR 48. Plaintiff testified that she had completed some college and had an Associate's Degree in business organization. AR 52. Plaintiff's only source of income is worker's compensation. *Id.* Plaintiff lives on the second floor of an apartment building with no elevator and approximately 12 steps to access her apartment. AR 54. Plaintiff sometimes drives. AR 55. In explaining her typical day, Plaintiff stated that she showers, rests, and gets dressed. Sometimes, while getting dressed, Plaintiff stated that she requires assistance or she may need to rest. AR 56. Plaintiff then testified that she makes a quick breakfast, like cereal, and might take a pain pill to help with her muscle spasms. On an average day, Plaintiff explained that she may

attend a doctor appointment, or she will watch television or listen the radio. AR 57. Plaintiff reported that she typically spends 4 to 4 and ½ hours laying down each day due to muscle weakness, pain, and spasms. *Id*. She reported that when she sits over 15 minutes, she gets numbness. AR 58. Plaintiff further stated that she can only stand for 10 to 15 minutes and that she cannot walk a full block. *Id*. Plaintiff reported that she could maybe lift 15 to 20 pounds. *Id*. Plaintiff explained that she has regular pain in her back as well as muscle spasms that last 10 to 15 minutes. AR 59. She stated that on a scale of 0 to 10, her pain during a typical day is at a 7½ to an 8. *Id*. Plaintiff testified that the pain as well as the pain medication often prevent her from concentrating. *Id*.

In addition to Plaintiff, a vocational expert testified during the hearing. There were no objections as to the qualifications of the vocational expert. AR 62. The vocational expert reviewed Plaintiff's work history and listened to Plaintiff's testimony. AR 61-62. The ALJ posed a hypothetical question to the vocational expert asking about an individual with the same age, educational profile, and past work as Plaintiff. The ALJ asked, "[i]f this hypothetical individual would be limited to light work, no climbing of ladders, ropes, or scaffolds, occasional climbing of stairs or ramps, occasional stooping, crouching, crawling, or kneeling. Could the hypothetical individual do the past work of the claimant?" AR 63. The vocational expert responded that the hypothetical individual could do Plaintiff's past work. *Id*. The ALJ further asked, "[i]f the hypothetical individual also had the additional limitation of being able to alternate between sitting or standing, at will—I'm going to define at will to be at least every ten minutes without leaving the workstation throughout the eight-hour workday—could the hypothetical individual perform the past work of Plaintiff?" *Id*. The vocation expert responded that "as performed, the individual could perform the job. As normally performed in the national economy, my response

would be no." *Id.* The vocational expert also gave examples of other jobs available in the

national economy for which the hypothetical person would be qualified such as machine tender,

packer and packaging worker, and grading and sorting worker. AR 64-65. Following this

exchange, Plaintiff's counsel asked the vocational expert whether or not the hypothetical worker

would be able to maintain employment if she were off task 25% of a typical day. AR 65. The

vocational expert replied that the hypothetical worker would not be able to maintain

employment. *Id.*

## II.    LEGAL STANDARD

The Social Security Act defines "disability" as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Inability to engage in substantial

gainful activity not only includes the individual's inability to do his previous work, but also

requires as well an inability, "considering [her] age, education, and work experience, [to] engage

in any other kind of substantial gainful work which exists in the national economy, regardless of

whether such work exists in the immediate area in which [s]he lives, or whether a specific job

vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." *Id.* §

423(d)(2)(A).  In making this determination through the previously outlined five-step process,

the ALJ is to consider medical data and findings, expert medical opinions, subjective complaints,

and the plaintiff's age, education, and work history.  *Davis v. Heckler*, 566 F. Supp. 1193, 1196

(D.D.C. 1983).

On judicial review, "[t]he findings of the Commissioner of Social Security as to any fact,

if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g).  Substantial

evidence is "'more than a mere scintilla'" and means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The test can be satisfied by "something less than a preponderance of the evidence*." Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003). In reviewing an administrative decision, a court may not determine the weight of the evidence, nor can it substitute its judgment for that of the Secretary if her decision is based on substantial evidence. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Secretary, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight she has given to obviously probative material. *Id.* "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000).

The reviewing court must also determine whether credible evidence was properly considered by the ALJ. *Martin*, 118 F. Supp. 2d at 13. The ALJ's final decision must contain "a statement of findings and conclusions, and the reasons or the basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). An ALJ cannot merely disregard evidence that does not support her conclusion. *Dionne v. Heckler*, 585 F. Supp. 1055, 1060 (D. Maine 1984). A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight she has given to certain probative items of evidence. *Martin*, 118 F. Supp. 2d at 13. In short, the ALJ must "build an accurate and logical bridge from the

evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (internal quotation marks omitted) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

## III.    DISCUSSION

Plaintiff presents three arguments in favor of a judgement of reversal. First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. Second, Plaintiff claims that the ALJ failed to establish a logical connection between the evidence cited and the conclusions reached in determining Plaintiff's RFC. Third, Plaintiff contends that the ALJ's subjective symptom analysis is flawed. Addressing each argument in turn, the Court concludes that Plaintiff has presented no ground for a judgment of reversal.

### A.  ALJ's Evaluation of Medical Opinion Evidence

First, Plaintiff argues that the ALJ failed to give due weight to the medical opinions of the various doctors in the administrative record. The Court concludes that the weight the ALJ afforded to the medical opinions was supported by substantial evidence and that the ALJ sufficiently explained her determinations.

An ALJ is not obligated to give a treating source's medical opinion controlling weight. When an ALJ decides not to give a treating source's medical opinion controlling weight, the ALJ should consider the following factors—the length and frequency of the examining relationship, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c)(2). Additionally, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") espouses a "treating physician rule" that creates a presumption in favor of treating physicians' opinions of claimants' conditions. *See*

*Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987) ("Because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight.") However, this presumption can be rebutted—and a fact-finder will not be bound—if the treating physician's opinion is "contradicted by substantial evidence." *Butler*, 353 F.3d at 1003 (internal quotation marks omitted). The Court will now turn to Plaintiff's specific objections to the weight granted to each of the medical opinions.

First, Plaintiff faults the ALJ for affording little weight to the opinions of Dr. Craig. The ALJ explained that she gave little weight to the medical opinion of Dr. Craig because she is not an orthopedic specialist and her findings "are not consistent with the medical evidence of record." AR 28. The ALJ considered Dr. Craig's opinions which put Plaintiff "at a sedentary exertional level with accompanying restrictions on standing and walking." *Id.* However, the ALJ found this determination to be inconsistent with the record as Plaintiff denied an unsteady gait and the strength in of the major muscles innervated by the lumbar spine was graded a 5/5 in November 2016.[4] AR 28, 574-77. Additionally, tests from December 2016 showed that Plaintiff had normal neurologic responses in her lower extremities, the strength of the muscles innervated by the lumbar spine was graded 5/5, and her cervical spine range was normal in extension. AR 28, 543, 489. Finally, the ALJ discounted Dr. Craig's statement that Plaintiff was incapable of even low stress work as that statement was not a medical opinion. AR 28.

The Court finds that the ALJ satisfied the burden of producing substantial evidence to contradict Dr. Craig's opinions by drawing on medical evidence in the record. The regulations require only that "good reasons" be provided for the weight given to a treating physician's

---

[4] The Court notes that the ALJ stated that the cited records were from September 2016. However, they appear to be dated November 18, 2016. AR 573.

opinion. *See* 20 C.F.R. §§ 404.1527(c)(2). Here, the ALJ specifically relied on Dr. Craig's own medical records from November 2016 in which Plaintiff denied an unsteady gait and was graded to have 5/5 strength of the muscles innervated by the lumbar spine. AR 574-77. She also relied on Dr. Craig's medical records from December 2016 showing that Plaintiff's cervical spine range of motion was normal in extension and finding, again, that testing of the major muscles innervated by the lumbar spine was 5/5. AR 543. Dr. Craig's opinion was also inconsistent with other evidence in the record. For example, Plaintiff's injury leading to her disability claim occurred in 2000, but Plaintiff continued to work until 2007 and stopped only when light duty work was no longer available. AR 27, 309, 393. Additionally, the ALJ highlighted that Plaintiff was able to manage her symptoms and function in her daily activities. AR 27-28. And, during the hearing, Plaintiff admitted that she was no longer seeing an orthopedic specialist for her back. AR 56. Accordingly, the ALJ fulfilled the duty to "evaluate every medical opinion" by acknowledging Dr. Craig's opinions, and she fairly exercised her discretion to discount those opinions by providing good reasons for doing so based on the record evidence. *See* 20 C.F.R. § 404.1527(c). As such, the Court finds that the ALJ cited substantial evidence in granting little weight to the medical opinions of Dr. Craig.

Furthermore, Dr. Craig's opinion as to whether or not Plaintiff was capable of more than sedentary work was not a medical conclusion. According to Social Security Agency regulations, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1). As such, the ALJ was justified in granting little weight to Dr. Craig's opinion as to Plaintiff's ability to work and finding it contradicted by the record.

Plaintiff also faults the ALJ for granting little weight to the opinions of Dr. Phillips and Dr. Green.[5] Plaintiff claims that the ALJ failed to consider the regulatory factors in determining what weight to afford the opinions. However, the ALJ specifically explained why she believed that the doctors' opinions were not supported by objective medical evidence, which is one of the six factors discussed. *See* 20 C.F.R. § 404.1527(c)(4) ); *see also Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993) ("That the ALJ did not expressly state his reason for not applying the treating physician rule is of no moment because he noted the contradictory evidence in the record, which record supplies the reason."). Therefore, the ALJ fulfilled her duty to "evaluate every medical opinion" by acknowledging the opinions of Drs. Phillips and Green, and she fairly exercised her discretion to discount those opinions by providing good reasons for doing so. *See* 20 C.F.R. § 404.1527(c).

Specifically, Plaintiff faults the ALJ for finding that Drs. Phillips and Green's opinion that Plaintiff is reduced "to a sedentary exertional level" is "inconsistent with the record as the claimant, as of December 2016, denied an unsteady gait and the strength in her lower extremities was graded a 5/5." AR 28, 574-77. However, Plaintiff does not allege that the ALJ failed to analyze all the evidence in the record. Instead, Plaintiff faults the ALJ for crediting certain evidence and discounting other evidence. The ALJ accorded little weight to the opinions of Drs. Phillips and Green based on contradictory record evidence from Plaintiff's medical records. It is not for the Court to "reweigh the evidence." *Guthrie v. Astrue*, 604 F. Supp. 2d 104, 112 (D.D.C. 2009). The ALJ determined that evidence that Plaintiff denied an unsteady gait and had 5/5

---

[5] The ALJ and Plaintiff reference the "opinions of Dr. Jeffrey H. Phillips, M.D., Ph.D., Dr. Neil A. Green, M.D., Dr. Frederic Slater, M.D., Dr. Richard Meyer, M.D., and Dr. K. Thomas Wagner, M.D." AR 28. These names were listed on the practice letterhead, but Plaintiff was seen primarily, if not exclusively, by Dr. Phillips and Dr. Green.

strength in her lower extremities contradicted the doctors' opinion that Plaintiff was reduced to a sedentary exertional level. AR 38. As such, the Court finds that the ALJ cited substantial evidence in granting little weight to the medical opinions of Drs. Phillips and Green.

The Court further notes that the Drs. Phillips's determination that Plaintiff was reduced to sedentary work was made in March 2010, approximately five years prior to the alleged onset date of Plaintiff's disability. AR 505-06. The medical record making this finding elaborated that Plaintiff "should not be working as an *active* special police officer." *Id.* (emphasis added). Moreover, Dr. Phillips's conclusory finding that Plaintiff was limited to sedentary work was not a medical opinion and was not controlling on the ALJ. *See* C.F.R. §§ 404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). After Plaintiff was discharged in 2010, Plaintiff returned to Drs. Phillips and Green once in 2014 but did not return regularly until 2016, following her motor vehicle accident. AR 56. Dr. Green's later determination in November 2016 that Plaintiff was not fit to work appears to be primarily connected to the injuries from her car accident, not solely to her underlying disabilities. AR 492. As such, the ALJ was justified in granting little weight to Drs. Phillips and Green's opinion as to Plaintiff's ability to work and finding it contradicted by the record.

Next, the ALJ gave some weight to the medical opinion of Dr. Rebecca Gliksman. AR 28. The ALJ determined that Dr. Gliksman's opinion was somewhat consistent with the medical record. The record showed that Plaintiff had no sensory deficit and had 5/5 strength in her lower extremities. Additionally, Dr. Gliksman reported that Plaintiff had a slow gait and walked with a limp that normalized without the use of an assistive device. *Id.* The ALJ found these determinations to be consistent with other evidence that Plaintiff denied an unsteady gait, was

graded to have 5/5 strength in the major muscles innervated by the lumbar spine, and had normal neurological responses. AR 574-77, 489. However, due to the age of the consultative exam, the ALJ concluded that she "could not wholly rely on it when making [her] determination." *Id.*

Plaintiff contends that Dr. Gliksman's opinion should have been given more weight. According to Plaintiff, "Dr. Gliksman's assessment is directly in the relevant period." Pl.'s Opp'n and Reply, ECF No. 22, 8. But, Dr, Gliksman examined Plaintiff in July 2014, and Plaintiff's alleged disability onset date is not until April 2015. AR 404.

Plaintiff further argues that if the ALJ determined that the record was incomplete due to the age of the medical records, the ALJ "should have sought out a medical opinion if she felt that Bennet's condition had substantially changed versus playing doctor." Pl.'s Opp'n and Reply, ECF No. 22, 8. But, while the ALJ can request additional examinations, it is "axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted). Here, there is no evidence that the ALJ determined that Plaintiff's condition had substantially changed or that there were significant gaps in the medical record. As such, the Court concludes that the ALJ was not required to ask for additional medical examinations.

Ultimately, Dr. Gliksman concluded that Plaintiff's prognosis was fair to guarded and that Plaintiff "has moderate limitation in walking, climbing, lifting, and carrying due to" lumbar pain with limited range of motion and some decreased strength. AR 407. Dr. Gliksman's conclusion is not adverse to the ALJ's conclusion that Plaintiff is "restricted to a light exertional

level of work." AR 29. Accordingly, the Court finds that the ALJ cited substantial evidence in granting some weight to the medical opinion of Dr. Gliksman.

Additionally, Plaintiff faults the ALJ for not affording more weight to the opinions of the state agency doctors. The ALJ gave little weight to the opinions of the state medical consultants as their opinions were not consistent with the medical evidence of record. First, both state agency opinions called for a sedentary exertional level. AR 29, 89, 99. However, the ALJ found a sedentary exertional level to be inconsistent with Plaintiff's denial of an unsteady gait and the fact that strength in the major muscles innervated by the lumbar spine was graded at 5/5. AR 574-77. Additionally, both state agency opinions found that Plaintiff could frequently climb ramps and stairs. AR 91, 101. But, the ALJ found that the ability to frequently climb ramps and stairs was inconsistent with Plaintiff's mild right antalgic gait. AR 504. Additionally, the ALJ credited Plaintiff's statement that she sometimes did not leave her apartment for days, which is located on the second floor of her building with no elevator. AR 54.

Plaintiff did not attack the ALJ's treatment of the state agency opinions on any specific ground but, instead, generally objected to the limited weight the ALJ granted the opinions. However, the ALJ explained her reasons for affording the state agency opinions limited weight. The ALJ cited to specific portions of the record which contradicted the findings of the state agency doctors. Moreover, the state agency doctors both found that, during an 8-hour workday, Plaintiff could stand or walk for 4 hours, with normal breaks, and sit for about 6 hours, with normal breaks. AR 91, 100. These determinations are not inconsistent with the ALJ's ultimate determination that Plaintiff is capable of a light exertional level of work with no climbing of ladders, ramps, or scaffolds, and only occasional climbing of stairs or ramps, stooping, crouching, or kneeling. AR 29.

Finally, Plaintiff generally faults the ALJ for rejecting the opinions of all the medical doctors and offering her own RFC. Plaintiff contends that all medical opinions supported greater restrictions than the ALJ's RFC. According to Plaintiff, the ALJ's rejection of all medical opinions of record requires reversal.

If an administrative decision departs from the recommendations of a treating physician, the ALJ bears the burden of explaining why she has rejected the treating physician's opinion and how the doctor's assessment is "contradicted by substantial evidence." *Williams*, 997 F.2d at 1498 (internal quotation marks omitted). For each medical opinion to which the ALJ afforded little or some weight, the ALJ explained why that opinion was, at least in part, contradicted by other medical evidence in the record. AR 28-29. The presence of evidence adverse to the doctors' opinions created a situation "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). In such situations, "the responsibility for that decision falls on the [Commissioner] (or [his] designate, the ALJ)." *Id.* Where the ALJ credits and discredits certain medical opinions based on conflicting evidence in the record, it is not for the Court to reweigh the evidence. Altogether, "the ALJ acknowledged all of the medical opinions in the record, explained why [s]he viewed certain evidence as more credible than other evidence, and adequately explained why [s]he did not give 'controlling weight' to the ... [treating physicians'] assessments." *Hartline v. Astrue*, 605 F. Supp. 2d 194, 209 (D.D.C. 2009). Therefore, the Court finds that the ALJ did not err in failing to give controlling weight to the medical opinions in determining Plaintiff's RFC. *See Smith v. Astrue*, 534 F. Supp. 2d 121, 132 (D.D.C. 2008) ("While plaintiff contends that the ALJ's opinion is 'without medical basis' because he did not wholly adopt the opinions of the

state agency physicals or plaintiff's treating physicians …, it was the ALJ's duty to consider the entire record rather than to simply adopt the views of one set of physicians.").

Accordingly, for the reasons provided above, the Court concludes that substantial evidence supports the weight the ALJ afforded to the medical opinions of record. The Court will not reverse on this ground.

## B. ALJ's Explanation of the RFC

Next, Plaintiff contends that reversal is proper because the ALJ failed to explain adequately the basis of Plaintiff's RFC. Plaintiff contends that "the ALJ simply listed all of the evidence without clearly explaining which particular pieces of evidence led her to her conclusion." Pl.'s Opp'n and Reply, ECF No. 22, 9. According to Plaintiff, the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion" such that this Court can "assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review." *Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015) (internal quotation marks omitted).

The Court disagrees and finds that the ALJ "engaged in a sufficiently detailed assessment of the relevant evidence in the record" regarding Plaintiff's impairments and limitations. *Blackmon v. Astrue*, 719 F. Supp. 2d 80, 96 (D.D.C. 2010). In determining Plaintiff's RFC, the ALJ detailed Plaintiff's testimony during the hearing. The ALJ went on to explain that some of Plaintiff's testimony contained inconsistencies with regard to the severity of her symptoms. For example, the ALJ noted that, in a function report for her disability application, Plaintiff stated that she occasionally drives and attends church which appeared to conflict with other testimony that Plaintiff cannot sit for extended periods of time. AR 27, 318-19, 58. Additionally, the ALJ noted that statements from the administrative hearing showed that Plaintiff stopped working as a

special police officer in 2007 because there was no more light duty work. Plaintiff did not testify

that she quit working due to her impairments, and Plaintiff never testified that her impairments

worsened after she quit working as a special police officer. AR 51.[6] The ALJ took this

inconsistency to imply that Plaintiff could have continued performing light duty work despite her

impairments if such work had been available.

   The ALJ went on to explain that Plaintiff's alleged impairments and physical constraints

were "not entirely consistent with the medical evidence and other evidence in the record." AR

27. The ALJ fully detailed the diagnostic studies, examination findings, medical records, and

medical opinion evidence in explaining why Plaintiff's alleged impairments were not consistent

with the record evidence. The ALJ acknowledged that an MRI in December 2014, a CT scan in

December 2015, and a radiological exam in October 2016 all showed degenerative changes and

more in Plaintiff's lumbar and/or left knee region. AR 27, 428 (MRI of lumbar region), 463 (CT

scan of lumbar region), 580-81 (X-ray of lumbar region and left knee). Despite these

degenerative changes, the ALJ noted that "the record indicates that the claimant is managing her

symptoms and that she is still able to function." AR 27. In support of her determination, the ALJ

cited a consultative examination from July 2014 which showed that Plaintiff's gait was slow but

normal with a limp that normalized without an assistive device. AR 27, AR 405-06. That

---

[6] In her Motion, Plaintiff states "Bennett also explained that her condition has continued to
worsen." Pl.'s Mot., ECF No. 19, 17. In support of this statement, Plaintiff cites to the
administrative record at pages 75-76. However, these pages are excerpted from Plaintiff's prior
administrative hearing, not the administrative hearing relevant to her ultimate disability denial.
AR 75-76. Moreover, in the cited pages, Plaintiff did not testify that her condition has continued
to worsen. *Id.* Instead, Plaintiff clearly stated that she stopped working in 2007 because "I was
informed that there was no longer any light duty for me there at Metro." AR 75. While Plaintiff
cites one medical record from November 2015 in which Plaintiff reported that her pain was
"worse since onset," the ALJ was entitled to consider that Plaintiff did not testify as such during
the administrative hearing and that Plaintiff stated that she left her job only because there was no
more light duty work. AR 556, 51.

consultative exam also described Plaintiff as having a knee flexion of 90 degrees, full cervical spine flexion, full lateral movements, no sensory deficits, and 5/5 strength in her lower extremities. AR 27, AR 405-07. In September 2014, medical records indicated a mild antalgic gait; but Plaintiff's reflexes, sensation, and motor power were intact. AR 27, 504. The ALJ further noted that, in November 2016, Plaintiff denied an unsteady gain and was found to have 5/5 strength in the major muscles innervated by the lumbar spine. AR 27, 574-76. While Plaintiff had a decreased range of motion in her lumbar spine due to pain and muscle spasms in December 2016, the strength of the muscles innervated by her lumbar spine was 5/5 and her cervical spine range was normal in extension. AR 27, 543. Another examination in December 2016 found that Plaintiff had mild decreased range of motion in the lumbar region, which had improved since November 2016, and that Plaintiff had normal neurological responses in her lower extremities. AR 27-28, 489.

Plaintiff specifically faults the ALJ for relying on Plaintiff's generally intact gait and her benign neurological examinations in determining that Plaintiff's alleged disabilities were "not entirely consistent with the medical evidence and other evidence in the record." AR 27. However, the ALJ acknowledged contradictory evidence, such as Plaintiff's mild antalgic gain. AR 27, 504. In the face of such contradictory evidence, the ALJ was entitled to credit objective medical records showing that Plaintiff had denied an unsteady gait and was found to have 5/5 strength in the major muscles innervated by the lumbar spine. AR 27, 574-76. The ALJ was further entitled to credit medical records showing that Plaintiff exhibited normal neurological responses. AR 27-28, 489, 504. Plaintiff cites no evidence of abnormal neurological responses. Instead, Plaintiff points to other record evidence which shows that Plaintiff was in pain, had muscle spasms, and had a decreased range of motion. But, the court will not, as Plaintiff

requests, "reweigh the evidence and replace the [ALJ's] judgment regarding the weight of the

evidence with its own." *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005) (internal

quotation marks omitted).

Plaintiff further faults the ALJ for not considering Plaintiff's obesity. But, the ALJ

explicitly stated that she "also evaluated obesity pursuant to the extensive and detailed guidelines

set forth in SSR 02-1p." AR 25. The ALJ found Plaintiff's obesity to be a non-severe impairment

due to a lack of "evidence that obesity caused significant limitations in the claimant's ability to

perform work related functions." *Id.* However, the ALJ still "fully considered obesity in the

context of the overall record evidence in making [her] decision." *Id.* As such, the Court finds

unpersuasive Plaintiff's argument that the ALJ must reconsider Plaintiff's obesity.

In addition to recounting the record medical evidence and explaining which portions she

credited and discredited, the ALJ went on to give a thorough explanation as to why she granted

little to some weight to each of the medical provider's opinions. In the previous section, the

Court explained why the ALJ's grant of certain weights to each medical opinion was supported

by substantial evidence, and the Court will not recount that evidence here. *See supra* Sec. III.A.

Based on the record evidence, the ALJ found that "the objective medical evidence is

inconsistent with the claimant's statements and symptoms regarding [her] impairments [], which

are present, but manageable." AR 28. Based on Plaintiff's generally intact gait, her normal

neurological functioning, and her 5/5 strength in the major muscles innervated by the lumbar

spine, the ALJ found that Plaintiff could perform light work. AR 29 (restricting Plaintiff "to a

light exertional level of work"). The ALJ then explained Plaintiff's limitations pertaining to

work-related functions. Specifically, the ALJ further determined that Plaintiff's statements as

well as the medical evidence of record "allow for no climbing of ladders, ropes, or scaffolds;

occasional climbing of stairs or ramps, and occasional stooping, crouching, crawling or kneeling." *Id.*

An ALJ's narrative discussion of a plaintiff's RFC must "contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; … a resolution of any inconsistencies in the evaluation as a whole; and … a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96–8p. Here, the ALJ did more than recount Plaintiff's medical history and make a conclusory determination of Plaintiff's RFC. Instead, the ALJ acknowledged Plaintiff's medical diagnoses and test results, explained the relevance of certain objective medical findings, and made clear why Plaintiff's testimony about her pain and limitations was not fully credited. As such, the Court finds that "the ALJ's residual functional assessment involved a sufficient discussion of the relevant evidence, including which was credited and which was rejected (such as Plaintiff's testimony), as SSR 96–8p mandates." *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 36 (D.D.C. 2014); *see also Goodman v. Colvin*, 233 F. Supp. 3d 88, 111-12 (D.D.C. 2017) (finding that "the ALJ included sufficient information to satisfy the narrative discussion requirement of the RFC determination" where the ALJ "considered the record as a whole and discussed which evidence he found credible and why").

Accordingly, for the reasons provided above, the Court concludes that the ALJ created a logical connection between the record evidence and Plaintiff's RFC. The Court will not reverse on this ground.

## C. ALJ's Subjective Symptom Analysis

Finally, Plaintiff contends that reversal is appropriate because the ALJ's subjective symptom analysis was flawed. Pursuant to Social Security regulation, the ALJ must "consider all [the claimant's] symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 40 C.F.R. § 404.1529(a). First, the ALJ must determine whether "a medically determinable impairment(s) is present." 40 C.F.R. § 404.1529(b). "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If medical signs or laboratory findings show a medically determinable impairment that could produce the claimant's symptoms, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 40 C.F.R. § 404.1529(c). In evaluating the intensity and persistence of symptoms, the ALJ "consider[s] all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the claimant's] symptoms affect [the claimant]." *Id.* For the reasons explained below, the Court finds that the ALJ met the requirements under the regulation.

As an initial matter, Plaintiff contends that "the ALJ applies the two-prong subjective symptom analysis backwards as she first engages in a symptoms analysis prior to considering the objective records and medical opinions." Pl.'s Mot., ECF No. 19, 16. The Court disagrees. Prior to evaluating the intensity and persistence of Plaintiff's symptoms, the ALJ first determined that medically determinable impairments were present and could produce Plaintiff's symptoms. AR

27 ("I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms"). Only after making this determination did the ALJ turn to analyzing whether or not the severity and persistence of those symptoms, including pain, could limit Plaintiff's capacity for work. AR 27-29 (concluding that "the claimant's aforementioned impairments are adequately accommodated" by the decided-upon RFC). As such, the Court concludes that the ALJ did not err in the process by which she conducted the two-prong symptom analysis.

Beyond challenging the ALJ's process, Plaintiff also challenges the substance of the ALJ's symptom analysis. Plaintiff argues that the ALJ did not afford sufficient weight to her testimony concerning how her life activities have been affected by her impairments. Plaintiff further contends that her testimony, in conjunction with medical records and provider opinions, demonstrates that her symptoms limited her capacity for work beyond the ALJ's determination of Plaintiff's RFC.

The Court disagrees. The ALJ considered Plaintiff's subjective testimony about her limitations, including that Plaintiff experienced back pain, back spasms, and leg pain. AR 26. The ALJ further considered Plaintiff's testimony that her impairments affected her daily activities such as dressing, cooking, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and concentrating. *Id.* The ALJ acknowledged that Plaintiff's medically determinable impairments could cause the alleged symptoms; however, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 27.

In determining how Plaintiff's physical impairments, including pain, could limit Plaintiff's ability to work, "the ALJ evaluate[d] the claimant's 'statement[s] in relation to the objective medical evidence and other evidence'" and determined that there were inconsistencies. *Butler v. Barnhart*, 353 F.3d at 1004 (quoting 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). First, the ALJ found internal inconsistencies in Plaintiff's own testimony and prior statements. AR 27. The ALJ noted that Plaintiff drives and attends church, which the ALJ found to be inconsistent with an inability to sit for extended periods of time. AR 27, 318-19, 58. The ALJ further noted that Plaintiff testified that she stopped working as a special police officer because there was no more light duty work, not because she was no longer able to work due to her impairments. AR 51. And, Plaintiff did not testify that her impairments worsened after she stopped working. *See Supra* fn.4. The ALJ noted that these statements were inconsistent with Plaintiff's testimony regarding the intensity and pervasiveness of her symptoms.

The ALJ further found that Plaintiff's alleged symptoms and limitations were not consistent with the objective medical evidence. AR 27. The ALJ particularly focused on the fact that Plaintiff's gait normalized without the use of an assistive device, that Plaintiff had no sensory deficits, that Plaintiff was graded to have 5/5 strength testing of the major muscles innervated by the lumbar spine, that Plaintiff had intact reflexes and sensation, that Plaintiff denied an unsteady gait, that Plaintiff had normal neurological responses in her lower extremities, and that Plaintiff's lumbar range of motion increased from November 2016 to December 2016 following her car accident. AR 27-28. However, the ALJ did not simply cherry-pick evidence to support a foregone conclusion. The ALJ also acknowledged evidence that Plaintiff's symptoms could produce some limitations. For example, the ALJ recounted objective medical evidence such as a MRI, a CT scan, and X-rays which showed Plaintiff suffered from a

variety of degenerative impairments in her knee and lumbar region. AR 27. The ALJ also recounted medical records stating that Plaintiff had a mild right antalgic gait and a decreased range of motion in her lumbar region due to pain and spasms. *Id*. As such, the Court finds that the ALJ did not completely discount Plaintiff's testimony of her symptoms. Instead, based on the objective medical evidence, the ALJ determined that Plaintiff's alleged impairments were present but manageable. AR 28.

Ultimately, the ALJ explained that Plaintiff's subjective statements about her symptoms, pain, and limitations were not fully consistent with the record evidence, including internal inconsistencies in Plaintiff's statements, objective medical records, Plaintiff's treatment and the effectiveness of that treatment, and Plaintiff's daily activities. *Petty v. Colvin*, 204 F. Supp. 3d 196, 210 (D.D.C. 2016) ("An ALJ is entitled to find an individual's statements to be less credible when they are contradicted by objective medical reports."). In determining what weight to grant Plaintiff's testimony about her symptoms, the ALJ's decision contained "specific reasons for the weight given to the individual's symptoms, [was] consistent with and supported by the evidence, and [was] clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p. In discounting some of Plaintiff's testimony pertaining to her symptoms and the limitations caused by those symptoms, the ALJ gave "explicit and adequate reasons," including references to Plaintiff's own statements and objective medical evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). While the ALJ discounted some of Plaintiff's statements concerning her symptoms, the ALJ did not fully discount those statements and conclude that Plaintiff was capable of engaging in all work functions. Instead, based on Plaintiff's testimony and the objective medical evidence, the ALJ restricted Plaintiff to "a light exertional level of work" with "no climbing of ladders, ropes, or

scaffolds; occasional climbing of stairs or ramps, and occasional stooping, crouching, or kneeling." AR 29. Because substantial evidence in the record supported the ALJ's determination, the Court finds that the ALJ properly conducted the subjective symptom analysis.[7]

Accordingly, for the reasons provided above, the Court concludes that the ALJ did not err in conducting the subjective symptom analysis. The Court will not reverse on this ground.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's [19] Motion for Judgment of Reversal and GRANTS Defendant's [20] Motion for Judgment of Affirmance. The Court concludes that substantial evidence supports the weight the ALJ afforded to the medical opinions of record, that the ALJ created a logical connection between the record evidence and Plaintiff's RFC, and that the ALJ did not err in conducting the subjective symptom analysis. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[7] In making her argument, Plaintiff further contends that the ALJ did not account for the effect of Plaintiff's obesity. The Court has already addressed this argument and will not repeat it here. *See Supra* Sec. III.B, AR 25 ("I have fully considered obesity in the context of the overall record evidence in making this decision.").